FILED

MAR 12 2018

Clerk, U.S. Courts
District Of Montana
Missoula Division

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *Ex rel.* LENORE LUDLOW, <br><br> Plaintiff/Relator, <br><br> -vs- <br><br> BELLAMAH VEIN & SURGERY, PLLC, d/b/a BELLAMAH VEIN CENTER and d/b/a BELLAMAH VEIN AND SURGERY, DAVID BELLAMAH, M.D., and JOHN DOES 1-5, <br><br> Defendants. | CIVIL ACTION NO. CV-18-57-M-DLC <br><br> **TO BE FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> **COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT AND RICO ACT** <br><br> **JURY TRIAL DEMANDED** |

## **INTRODUCTION**

1.      Qui Tam Plaintiff/Relator, Lenore Ludlow (hereinafter "Relator"),

brings this action on her own behalf, on behalf of the United States of America,

and on behalf of the State of Montana to recover civil damages and penalties under

the Federal False Claims Act, 31 U.S.C. § 3729, *et seq.*, against Defendants,

Bellamah Vein & Surgery, PLLC, d/b/a Bellamah Vein Center and d/b/a Bellamah

Vein and Surgery, David Bellamah, M.D., and John Does 1-5 (hereinafter

collectively "Defendants").

2.      Relator's allegations relate to false statements made regarding the

severity of venous reflux disease, also known as varicose veins, for purpose of generating proceeds for medical services. Veins are the blood vessels that return blood to the lungs for re-oxygenation, and then the re-oxygenated blood is sent to the heart for circulation to the body tissues. Veins operate as one-way valves, returning blood to the heart and lungs while preventing back flow of the blood in the vessel.  In varicose veins, the valves do not work properly, allowing the blood to seep back into the vessel and pool in the veins.  Varicose leg veins usually occur in the deep and superficial veins of the legs.  Varicose veins are swollen, dilated, elongated, and often twisted.  In this matter, the treatments for varicose veins involve the greater saphenous veins, the small saphenous veins, and perforator veins.

3.     At all times pertinent, Relator acted as a certified ultra-sonographer who was in the employ of Defendant Bellamah Vein & Surgery, PLLC. As part of their practice, Defendants bill insurance providers, including Medicare, other governmental beneficiary programs, and private insurance companies, for medical and surgical procedures associated with varicose veins.

4.     Defendants concocted a plan whereby medical records of patients (beneficiaries of Medicare and other governmental benefits programs) were altered to advance the Defendants' claims for compensation. As part of this scheme, Defendants forced Relator to deviate from ultra-sonographic standards of care and

- 2 -

ethics by requiring Relator to conduct improper or inaccurate measurements during imaging to ensure the imaging met the billing and coding requirements for the elective surgery, effectively altering the objective medical records.

## JURISDICTION AND VENUE

5.     This action arises under the laws of the United States to redress violations of the federal False Claims Act, 31 U.S.C. § 3729 *et seq*.

6.     This Court maintains subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) (False Claims Act), 28 U.S.C. § 1331 (Federal Question Jurisdiction) and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

7.     Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) because: (a) Bellamah Vein & Surgery, PLLC and David Bellamah, M.D. both reside in this District; (b) Bellamah Vein & Surgery, PLLC and David Bellamah, M.D. both transact business in this District and did so at all times relevant to this Complaint; and, as averred below, (c) Bellamah Vein & Surgery, PLLC and David Bellamah, M.D. both committed acts proscribed by 31 U.S.C. § 3729 within this District.

8.     Relator has served a copy of this Complaint upon the United States, together with a written Disclosure Statement setting forth and enclosing all material evidence and information she possesses, pursuant to the requirements outlined in 31 U.S.C. § 3730(b)(2). Relator has complied with all conditions

precedent to bringing this action.

9.      Relator is the original source of, and has direct and independent
knowledge of, all information upon which the allegations herein might be based
and has voluntarily provided such information to the Government before filing this
action. Specific disclosures have been made to the U.S. Department of Justice, and
documentary proof of the fraud has been turned over to Assistant U.S. Attorney
Megan L. Dishong of the District of Montana, Missoula Office.

## **PARTIES**

10.      Relator, Lenore Ludlow, is a natural person and was a resident of the
State of Montana at all times pertinent to this action.

11.      Defendant Bellamah Vein & Surgery, PLLC is a domestic limited
liability company registered to do business since 2014 in the State of Montana
(business identifier C247415). Its principal office is in Missoula, Montana.
Bellamah Vein & Surgery, PLLC has two (2) assumed business names which are
in active good standing: Bellamah Vein Center (business identifier A242553)
created August 24, 2015, and Bellamah Vein and Surgery (business identifier
A227500) created June 2, 2014.

12.      Defendant David Bellamah, M.D., is a physician licensed under the
State of Montana. David Bellamah is a medical doctor with a specialty in General
Surgery.

- 4 -

13.    Defendant Bellamah Vein & Surgery, PLLC (C247415) may be served with process through its registered agent David Bellamah, M.D., at 2975 Stockyard Road, Suite 200, Missoula, Montana, 59808.

14.    Defendant David Bellamah, M.D. is an individual and may be served with process by personal service.

## FACTS

15.    Defendants are in the business of treating venous reflux disease, also known as varicose veins.

16.    Varicose veins occur when the inner walls of veins become deteriorated. There are small valves inside the veins which become incompetent and defective. When a vein's valves become incompetent in either the superficial or deeper vein system, the blood begins flowing backwards, away from the lungs and towards the foot. This process is referred to as "reflux". If the superficial veins are the only veins with incompetent valves, the deep veins will attempt to make up for the incompetent superficial veins. The deep veins will then carry more blood to the heart, but the deep veins must expand to compensate for this added blood. This can cause the valves in the deep veins to either fail or improperly close. If this happens, the deep vein system is at risk for becoming incompetent as well. Varicose veins may be treated by proper exercise, elevation of the legs and/or analgesics. Further non-invasive treatment includes use of compression stockings.

Relator was employed to perform ultrasound imaging of the great and small saphenous leg veins of patients suffering from varicose veins.

17.     The Defendants routinely engage in the treatment of varicose veins and surgical intervention of varicose veins. Treatment of varicose veins and surgical intervention of varicose veins is subject to the protocol established by Noridian Healthcare Solutions (Jurisdiction J-F) which provides administrative services to Medicare providers, including: what items are covered by Medicare; whether care is medically necessary; and, whether the types and costs of the services provided meet established standards of practice.

18.     Relator was employed by Defendants as an ultrasound technician from August 2014 through July 2016. Relator performed sonograms on behalf of Defendants. As part of Relator's job description, she was to maintain clinical functions and protocols for successful patient care and daily operations. These responsibilities included, but were not limited to: (a) the ability to proficiently perform ultrasound diagnostic studies and decipher vascular results of those images; (b) perform accurate, detailed, and timely diagnostic studies on all patients ordered; (c) accurately manage all images and reports of the patient diagnostic studies; and (d) perform necessary administrative tasks to provide correct reporting of the diagnostic results.

19.     By virtue of her job, Relator was privy to intimate details regarding

- 6 -

patients' medical vendor lists, contracts, and other pertinent documents and information.

20.     With respect to both governmental and non-governmental patient beneficiaries, Defendants altered one or more patient medical records created by Relator to represent artificial conditions requiring unnecessary surgical intervention. This illegal scheme secured unwarranted monetary benefits, including but not limited to, federal and state monies allocated to the states through Medicare, and other governmental benefits programs.

21.     In approximately October 2015, Relator met with A.D., the office practice manager, and J.D., an agent of the Defendants, concerning ultra-sonographic reports entered on certain patients, which, according to protocol, determined no further treatment was necessary. Relator was given no specific corrective action.

22.     On or about April 16, 2016, Relator met with Dr. Bellamah, A.D., and J.D. The topics discussed included a personnel matter involving inter-office communication. The discussion then shifted to clinical issues expressed as "inconsistent ultra-sonographic examinations" performed by Relator and described as "sometimes thorough and sometimes not." During this meeting, Dr. Bellamah announced a new office protocol requiring sonographic images that revealed veins too small to qualify for insurance coverages be evaluated and reviewed by a second

- 7 -

sonographer to ensure compliance with a "spread sheet" identifying criteria required by various Providers, including Medicare and other governmental benefits programs.  This new "double-check" protocol was only used when the images showed that a patient's condition did not qualify for insurance coverage according to the criteria of that individual patient's insurance provider; if the initial image showed the patient would qualify for coverage under their plan, the imaging was not subject to the "double-check" process. The spread sheet provided was not in conformity with sonographer ethical and certification requirements, but rather was an in-house "cheat sheet" used by the other office technicians to guarantee all imaging studies identified varicose veins in accordance with the criteria for surgical intervention under each insurance provider, including Medicare and other governmental benefits programs.

23.    Defendants have operated as a common enterprise while engaging in deceptive and unlawful acts and practices and other violations of law as alleged herein. The common enterprise is the operation of a health care facility providing care and treatment, including surgery, of patients suffering from varicose veins. The patients are beneficiaries under various federal governmental programs including, but not necessarily limited to, Medicare, Medicaid, Tricare, and the Veterans Administration. Additionally, other patients are beneficiaries of private insurance programs. Because these Defendants have operated as a common

- 8 -

enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendant Bellamah Vein & Surgery PLLC, Defendant David Bellamah, M.D., and, as yet, unidentified individuals, John Does, have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Corporate Defendants that constitute the common enterprise.

## A.   DEFENDANTS ALTERED BENEFICIARY MEDICAL RECORDS.

24.   Relator was charged with performing duplex ultrasound imaging on the Defendants' patients to assist in identifying lower extremity venous reflux disease, a/k/a varicose veins.

25.   As part of the services provided, Relator performed imaging on beneficiaries of federal programs such as Medicare.

26.   On or about March 28, 2016, on behalf of the Defendants, Relator provided imaging services to E.H., a sixty-eight-year-old, who upon information and belief, received benefits pursuant to the Medicare program.

27.   The imaging study performed on E.H. did not reveal significant reflux disease to warrant surgical intervention under Medicare's criteria for surgical intervention.

28.   During the spring of 2016, E.H. underwent a second duplex ultrasound. Defendants determined this second imaging should be substituted for

the original imaging of March 28, 2016, effectively altering or deleting the medical records of March 28, 2016.

29.     Upon information and belief, Relator asserts E.H.'s original study was archived or deleted to obscure or eradicate evidence of the prior imaging which indicated surgery was unnecessary and therefore unapproved.

## B.     DEFENDANTS UPCODED BENEFICIARY MEDICAL RECORDS.

30.     Defendants have also engaged in "up-coding." Up-coding within the context of governmental medical services includes receiving proceeds for providing medical treatment on separate occasions, even though such treatments could be reasonably combined into a single treatment. In furtherance of the Defendants' common scheme, Defendants accomplished up-coding through various machinations by routinely conducting duplex imagining prior to a course of conservative treatment which first requires a three-month period of compression stockings, exercise, periodic leg elevation, weight loss, compressive therapy, and avoidance of prolonged immobility where appropriate. Despite knowledge that Medicare and other governmental beneficiary programs, do not authorize duplex imaging without first requiring proof of criteria set forth under Medicare C/D Medical Coverage Policy for varicose vein treatment.

31.     The criteria for surgical intervention require patients be symptomatic despite conservative therapy exercise, periodic leg elevation, weight loss,

compressive therapy, and avoidance of prolonged immobility where appropriate prior to surgical intervention. The criteria also require a three (3) month trial of graduated elasticized compression stockings.

32.     Under criteria set forth under Medicare C/D Medical Coverage Policy (for varicose vein treatment), Medicare recognizes additional medical services beyond conservative therapy may be required. In those cases, duplex studies of the venous system may be performed which define the anatomy of size and tortuosity of the great and small saphenous vein, the superficial venous segments, and perforators. If performed, the ultrasound must demonstrate valvular incompetence/reflux that correlates with the patient's symptoms and is CEAP Class 2 or greater.

## C.     DEFENDANTS ALTERED BENEFICIARY MEDICAL RECORDS.

33.     The Defendants' scheme included alteration of patient medical records to represent ultrasound imaging to have taken place on dates other than the actual date of the ultrasound imaging. The alterations allowed Defendants to present to providers, including Medicare and other governmental beneficiary programs, a record falsely representing the ultrasound imaging took place after a patient's clinical examination, even though the imaging was actually conducted before the patient's clinical examination. By altering the date of the ultrasound imaging, Defendants falsely represented the ultrasound imaging was obtained after

- 11 -

the clinical examination and after the required course of conservative treatment including the required three months of graduated compression stockings. By altering the date, Defendants improperly obtained compensation for which, at the original time of imaging, they were not entitled.

34.    If the criteria for conservative therapy have been met but the patient is not showing improvement, Medicare approves surgical treatments of varicose veins. Surgery takes different forms. Sclerotherapy involves injecting a solution directly into the vein. The sclerotherapy solution causes the vein to scar, forcing blood to reroute through healthier veins. The collapsed vein is reabsorbed into local tissue and eventually fades. Ablation therapy involves the use of probes inserted through the skin using flexible tubes (catheters) inserted through the impaired vein or, alternately, energy beams to reach the area requiring treatment. Imaging techniques are used to guide the ablation. The abnormal vein tissue is injured or destroyed with heat (radiofrequency ablation), extreme cold (cryoablation), or lasers. The Defendants offer sclerotherapy and ablation surgeries, as well as phlebectomies, which is the mechanical stripping of diseased veins.

35.    In March of 2016, Relator conducted duplex ultrasound imaging studies that showed the absence of valvular reflux disease in the legs of various patients. Following these studies, on April 16, 2016, David Bellamah, M.D.,

individually, and as agent of Bellamah Vein & Surgery, PLLC, met with Relator along with two other employees. Defendants informed Relator her studies were inconsistent. Relator requested to be informed of the details of the alleged deficiencies in her performance and to be presented with the ultrasound studies which were deemed inconsistent. Defendants declined to specify the alleged inadequacies or to present Relator with any specific images she conducted to verify the allegation of inconsistency. During this meeting, Defendants demanded Relator conform to protocol requiring a second ultra-sonographer be called in to conduct a separate imaging study if Relator's original study failed to demonstrate specific enlarged veins or reflux.

36.    Following adoption of the new protocol, Relator conducted a study on a patient that showed an absence of reflux or vein enlargement. Per the new protocol, Relator called in another sonographer who, using inappropriate techniques, rendered inaccurate results which provided a basis for conducting surgical treatments on the patient. Following the rejection of Relator's original study, Relator became concerned Defendants might have engaged in other inappropriate behavior. At this time, Relator learned Defendants had altered one of her studies by representing to reviewing authorities that Relator had added a corrective note which, in fact, she did not add or approve.

37.    The Defendants' scheme included development of an unstated office

- 13 -

policy to perform less than standard of care ultrasound imaging to create evidence as supporting proof of the need for surgical treatments as warranted and appropriate under the Medicare policy guidelines. Examples of this scheme included the reliance on inappropriate measurements and the failure to properly audit ultra-sonographic images.

38.    Relator resigned from employment with the Defendants effective July 21, 2016, following her discovery of Defendants' scheme to create and condone false imaging records, up-coded surgical services, and the unbundling medical procedures to obtain monetary benefits to which the Defendants would not otherwise be entitled.

**COUNT I (All Defendants)**
**Violation of the False Claims Act:**
**Making or Using False Record or Statement**
**31 U.S.C. § 3729(a)(1)**

39.    Relator reaffirms and re-alleges each allegation in ¶¶ 1 through 38, as if fully set forth herein.

40.    The Defendants knowingly made and used false records or statements so as to enable Defendants to receive monetary payments from the United States.

41.    By virtue of the false records or statements made by the Defendants, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,000 to $10,000 for each false claim.

## COUNT II (All Defendants)
## Violation of the False Claims Act:
## Presentation of False Claims
## 31 U.S.C. § 3729(a)(1)

42.     Relator reaffirms and re-alleges each allegation in ¶¶ 1 through 41, as if fully set forth herein.

43.     The Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval to the United States.

44.     By virtue of the false or fraudulent claims made by the Defendants, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,000 to $10,000 for each false claim.

## COUNT III (All Defendants)
## Violation of the False Claims Act:
## Conspiracy to Submit False Claims
## 31 U.S.C. § 3729(a)(1)

45.     Relator reaffirms and re-alleges the allegations in ¶¶ 1 through 44 as if fully set forth herein.

46.     Defendants combined, conspired, and agreed together to defraud the United States by knowingly submitting false claims to the United States and its grantees for the purpose of obtaining false or fraudulent claims paid or allowed. Defendants committed the other overt acts set forth above in furtherance of this conspiracy, all in violations of 31 U.S.C. § 3729(a)(1).

- 15 -

47.    By virtue of the Defendants' conspiracy, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,000 to $10,000 for each false claim.

## COUNT IV (All Defendants)
## Unjust Enrichment

48.    Relator reaffirms and re-alleges each allegation in ¶¶ 1 through 47, as if fully set forth herein.

49.    This is a claim for recovery of monies by which the Defendants have been unjustly enriched.

50.    By directly or indirectly obtaining government funds to which they were not entitled, the Defendants were unjustly enriched, and are liable to account and pay such amounts, or the proceeds or profits there from, which are to be determined at trial, to the United States.

## COUNT V (All Defendants)
## Payment by Mistake

51.    Relator reaffirms and re-alleges each allegation in ¶¶ 1 through 50, as if fully set forth herein.

52.    This is a claim for the recovery of monies paid by the United States to the Defendants by mistake.

53.    The United States, acting in reasonable reliance on the accuracy and

truthfulness of the information contained in the cost reports submitted by

Defendants, paid the participant Defendants certain sums of money to which they

were not entitled, and Defendants are thus liable to account and pay such amounts,

which are to be determined at trial, to the United States.

### COUNT VI (All Defendants)
### Recoupment of Overpayments

54.     Relator reaffirms and re-alleges each allegation in ¶¶ 1 through 53, as

if fully set forth herein.

55.     This is a claim for common law recoupment for the recovery of

monies unlawfully paid by the United States to the Defendants, contrary to statute

or regulation.

56.     The United States paid the Defendants certain sums of money to

which Defendants were not entitled. Defendants are thus liable under the common

law of recoupment to account and return such amounts, which are to be determined

at trial, to the United States.

### COUNT VII (All Defendants)
### Violation of the Racketeer Influenced and Corrupt Organizations Act
### (RICO) 18 U.S.C. § 1962

57.     With respect to non-governmental patient benefits insurance

programs, Relator repeats and realleges each allegation in ¶¶ 1 through 25, 32, 34,

37, and 38, as if fully set forth herein.

58.     Other patients of Bellamah Vein & Surgery, PLLC received benefits

- 17 -

through non-governmental private insurance companies and programs.

59.     Relator brings this action pursuant to 18 U.S.C. § 1962, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), for conspiring to violate 18 U.S.C. § 1962.

60.     At all times pertinent the following are RICO Defendants: Bellamah Vein & Surgery, PLLC, d/b/a Bellamah Vein Center and d/b/a Bellamah Vein and Surgery; David Bellamah, M.D.; and John Does 1-5.

61.     At all times pertinent the following are agents of the RICO Defendants: Bellamah Vein & Surgery, PLLC, d/b/a Bellamah Vein Center and d/b/a Bellamah Vein and Surgery; David Bellamah, M.D.; John Does 1-5; and, any others whom Relator has yet to identify.

62.     At all relevant times, the Relator and RICO Defendants were "persons" as defined pursuant to 18 U.S.C. § 1961(3).

63.     At all relevant times, the above-named RICO Defendants were engaged in "enterprises" as defined pursuant to 18 U.S.C. § 1961(4).

64.     At all relevant times, the above-named RICO Defendants engaged in, and their respective activities affected, interstate commerce, pursuant to 18 U.S.C. § 1962.

65.     At all relevant times, the above-named RICO Defendants engaged in a "racketeering activity" as defined pursuant to 18 U.S.C. § 1961(1).

66.     At all relevant times, the above-named RICO Defendants engaged in a "pattern of racketeering activity" as defined pursuant to 18 U.S.C. § 1961(5).

67.     In furthering the Fraud Scheme as described throughout this Complaint the above-named RICO Defendants engaged in a "prohibited activity" as proscribed by 18 U.S.C. § 1962(a)(c) and (d).

68.     The above-named RICO Defendants utilized numerous telephone calls, faxed communications, mailings through the United States Postal Service, e-mails, and internet communications, with various non-governmental insurance providers. All of these communications, in whatever form, with various non-governmental providers were made in furtherance of the Fraud Scheme as described throughout this Complaint and, therefore, all of these communications were made both in violation of the mail and wire fraud statutes and to cover up the validity of the fraudulent claims. This pattern of mail and interstate wire-communications and telecommunications occurred over an 18-month period from 2014 – 2016 including Relator's resignation on July 21, 2016, and all in furtherance of the Defendants' Fraud Scheme and the conspiracy to engage in a massive cover-up to victimize government benefits programs and non-governmental insurance programs.

69.     As detailed above, each of the above-named RICO Defendants agreed to the Fraud Scheme and to further perpetrate the Fraud Scheme by covering it up

- 19 -

through racketeering activity.

70.    As detailed above, all RICO Defendants were in managerial positions in the enterprise and all RICO Defendants participated in the Fraud Scheme.  All RICO Defendants also directed subordinates to carry out the Fraud Scheme, which occurred.

71.    Each RICO Defendant agreed to participate in the affairs of the enterprise through the commission of the Fraud Scheme and its cover-up, which is a pattern of racketeering activity (mail and wire fraud).

72.    Relator asserts claims against all RICO Defendants for conspiring to violate 18 U.S.C. § 1962(c), which prohibits any person employed by or associated with an enterprise from participating in the affairs of the enterprise through a pattern of racketeering activity.

73.    The conspiracy to violate 18 U.S.C. § 1962(c) is a violation of 18 U.S.C. § 1962(d).

74.    The RICO Defendants, through managers and employees, used telecommunications and the United States Postal Service to induce the non-governmental benefits programs to pay sums of money to which Defendants were not entitled under the various non-governmental benefit programs.

75.    As a direct result of said representations as presented in this Complaint, multiple non-governmental programs paid sums to the Defendants to

which the Defendants were not entitled.

76. In furtherance of their enterprise, the RICO Defendants required Relator to compromise the ethical standards required of her certification and violate her standards of care as an ultra-sonographer. As a direct result of the RICO Defendants' conduct, Relator suffered loss of established course of life and emotional damages in an amount to be determined at trial.

**WHEREFORE**, Relator Lenore Ludlow, on behalf of herself and the United States Government, prays for judgment against Defendants as follows:

1. As to Counts One, Two, Three, Four, Five, and Six (Violations of the False Claims Act, Unjust Enrichment, Payment by Mistake, and Recoupment of Overpayments):

A. That this Court enter Judgment in favor of Relator;

B. That this Court award Relator the damages allowed to her by law in an amount to be determined at trial;

C. That this Court enter a judgment in favor of the United States against Defendants in an amount equal to three times the amount of damages the United States sustained as a result of Defendants' violations of the False Claims Act;

D. That this Court enter a judgment in favor of the United States against Defendants for a civil penalty of Ten Thousand and No/100 Dollars

($10,000.00) for each of Defendants' violation of the False Claims Act pursuant to 31 U.S.C. § 3729(a)(1);

E.     That in the event the United States Government proceeds with this action, Relator be awarded an amount for bringing this action of at least fifteen percent (15%), but not more than twenty five percent (25%), of the proceeds of the action pursuant to 31 U.S.C. § 3730(d)(1);

F.     That in the event the United States Government does not proceed with this action, Relator be awarded an amount for bringing this action of at least twenty five percent (25%), but not more than thirty percent (30%), of the proceeds of the action pursuant to 31 U.S.C. § 3730(d)(2);

G.     That Relator recover all reasonable costs of this action, together with prejudgment interest, including the costs to the United States Government for its expenses related to this suit;

H.      That Relator recover all reasonable attorneys' fees incurred as a result of this suit;

I.     That a trial by jury be held on all issues so triable; and

J.     That Relator and the United States Government receive any and all relief to which either or both may be entitled at law or in equity.

2.     As to Count Seven (Violation of RICO):

A.     That this Court enter Judgment in favor of Relator;

B.    That this Court award Relator treble damages in an amount to be determined at trial, pursuant to 18 U.S.C. § 1964(c);

C.    That Relator recover all reasonable costs of this action, together with prejudgment interest;

D.    That Relator recover all reasonable attorneys' fees incurred as a result of this suit;

E.    That a trial by jury be held on all issues so triable; and

F.    That Relator receive any and all further relief as the Court deems just and equitable.

DATED this 12 day of March, 2018.

RESPECTFULLY SUBMITTED,

By:    James P. O'Brien

James P. O'Brien
O'BRIEN LAW OFFICE, P.C.
212 West Spruce Street
P.O. Box 7936
Missoula, MT 59807-7936
(406) 721-0660
*Attorney for Relator Lenore Ludlow*